IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 18-00010 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOHN D. WALKER, | ) |
| aka JON WALKER, | ) |
| MARVIN R. REED, | ) |
| KENNETH R. CROWE, | ) |
| PHILLIP T. KAPP, | ) |
| | ) |
| _____ Defendants. | ) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MICHAEL J. BORDALLO,
MAGISTRATE JUDGE
(Via telephone)
MAY 6, 2020; 9:00 A.M.
HAGATNA, GUAM

**Motion Hearing on an Amended Motion for Hearing to Address**    09:01:50AM
**Potential Conflict of Interest and a Motion for Protective**    09:01:54AM
**Order, Prevent Removal of Evidence, Schedule Inspection,**    09:01:58AM
**Prevent Harassment of Witnesses**    09:02:01AM

Proceedings recorded by *mechanical stenography*.

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES

Appearing on behalf of plaintiff:

**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: STEPHEN LEON GUERRERO, AUSA** (via telephone)
**MARIE MILLER, SAUSA** (via telephone)
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
(671) 472-7332

Appearing on behalf of Defendant Walker:

**LAW OFFICE OF JAMES M. MAHER**
**BY: JAMES M. MAHER, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 300, DNA Building
Hagatna, Guam 96910
(671) 477-7892

**BY: MACK K. MARTIN, ESQ.** (via telephone)
125 Park Avenue, 5th Floor
Oklahoma City, OK 73102

Appearing on behalf of Defendant Reed:

**LAW OFFICE OF PETER C. PEREZ**
**BY: PETER C. PEREZ, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

Appearing on behalf of Defendant Crowe:

**LAW OFFICE OF LUJAN & WOLFF**
**BY: DAVID J. LUJAN, ESQ.** (via telephone)
238 Archbishop Flores Street

**LAW OFFICE OF GREGORY NICOLAYSEN**
**BY: GREGORY NICOLAYSEN, ESQ.** (via telephone)
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
(818) 970-7247

Appearing on behalf of Defendant Kapp:

**LAW OFFICE OF ANTHONY C. PEREZ**
**BY: ANTHONY C. PEREZ, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

**BY: EDWARD A. MCCONWELL, ESQ.,** (via telephone)
**LAURA L. MCCONWELL, ESQ.** (via telephone)
5201 Johnson Drive, Suite 300
Mission, KS 66205

Appearing on behalf of Defendant Hansen:

**LAW OFFICE OF EDWARD C. HAN**
**BY: EDWARD C. HAN, ESQ.** (via telephone)
378 Sara Street
Purple Heart Highway
Maite, GU 96910
(671)477-9219

Appearing on behalf of Defendant Rogers:

**LAW OFFICE OF GUMATAOTAO & POLE**
**BY: WILLIAM B. POLE, ESQ.** (via telephone)
Suite 301, San Ramon Building
115 San Ramon Street
Hagatna, GU 96910
(671)475-0200

ALSO PRESENT:

John Walker, Defendant (via telephone)

Marvin Reed, Defendant (via telephone)

Kenneth Crowe, Defendant (via telephone)

Phillip Kapp, Defendant (via telephone)

Viranousith Khamvongsa, IRS agent (via telephone)

-------------------------------------------------
I N D E X

Page

Court to take matters under advisement and
issue decision shortly                          38

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

<pre>
 1                    May 6, 2020; 9:01 a.m.; Hagatna, Guam          09:00AM

 2                              * * *                                09:00AM

 3               THE CLERK:  Your Honor, all the parties are         09:01AM

 4    present.                                                       09:01AM

 5               THE COURT:  All right, go ahead and call the case   09:01AM

 6    then.                                                          09:01AM

 7               THE CLERK:  Okay, Your Honor.  Come to order, the   09:01AM

 8    District Court of Guam is now in session, the Honorable       09:01AM

 9    Michael J. Bordallo presiding on Criminal Case 18-00010, <em>USA</em>   09:01AM

10    <em>versus John D. Walker, Marvin R. Reed, Kenneth R. Crowe,</em>       09:01AM

11    <em>Phillip T. Kapp, Randall Rogers, and Hansen Helicopters</em> on a   09:01AM

12    Motion Hearing on an Amended Motion for Hearing to Address     09:01AM

13    Potential Conflict of Interest and a Motion for Protective     09:01AM

14    Order, Prevent Removal of Evidence, Schedule Inspection,       09:01AM

15    Prevent Harassment of Witnesses.                               09:02AM

16               Counsels, please state your appearance, starting   09:02AM

17    with the government.  And we'll go from Defendant 1 all the    09:02AM

18    way down.  Thank you.                                          09:02AM

19               MR. LEON GUERRERO:  Buenas and hafa adai, Your      09:02AM

20    Honor, this is Assistant U.S. Attorney Stephen Leon Guerrero.  09:02AM

21    Also present with me is IRS Agent Sith Khamvongsa.  Also       09:02AM

22    present is co-counsel, Special Assistant U.S. Attorney Marie   09:02AM

23    Miller.                                                        09:02AM

24               MS. MILLER:  Hafa adai, Your Honor.                 09:02AM

25               THE COURT:  Hafa adai.                              09:02AM
</pre>

```
 1          MR. MARTIN:  Your Honor, this is Mack Martin.  I       09:02AM

 2   represent John Walker.  I'm getting him on the other line.  I  09:02AM

 3   had accidentally disconnected him, but he'll be on the phone   09:02AM

 4   in just a moment.                                              09:02AM

 5          THE COURT:  And is local Counsel, Jim Maher, also       09:02AM

 6   on or is it just you, Mr. Martin?                              09:02AM

 7          MR. MARTIN:  Mr. Maher is on.                           09:02AM

 8          THE COURT:  Okay.  All right, thank you.                09:02AM

 9          MR. PEREZ:  Good morning, Your Honor, Peter Perez       09:02AM

10   present with Mr. Reed by telephone.                            09:02AM

11          THE COURT:  Okay.  Thank you.                           09:03AM

12          MR. LUJAN:  Good morning, Your Honor, -- Lujan          09:03AM

13   and, you know, and also on the phone is Gregory Nicolaysen on  09:03AM

14   behalf of Rufus Crowe and Mr. Nicolaysen will be arguing on    09:03AM

15   behalf of Mr. Crowe.                                           09:03AM

16          MR. NICOLAYSEN:  Good morning, Your Honor, Greg         09:03AM

17   Nicolaysen here from Los Angeles.                              09:03AM

18          MR. POLE:  Attorney William Pole, Your Honor --         09:03AM

19   go ahead.                                                      09:03AM

20          THE COURT:  Go ahead, go ahead.                         09:03AM

21          MR. POLE:  William Pole, Your Honor, on behalf of       09:03AM

22   Randall Rogers.  He's in Georgia.                              09:03AM

23          THE COURT:  Okay.                                       09:03AM

24          MR. MCCONWELL:  Edward McConwell, Laura McConwell       09:03AM

25   on behalf of Phillip Kapp, and Mr. Perez is on the phone too.  09:03AM
```

| | |
|---|---|
| 1 | (Pause.) |
| 2 | THE COURT:  All right. |
| 3 | MR. HAN:  This is Ed Han for Hansen Helicopters. |
| 4 | THE COURT:  Okay, and Mr. Nicolaysen, on behalf |
| 5 | of Mr. Lujan, has Mr. Nicolaysen filed his pro hac vice in |
| 6 | this case already? |
| 7 | MR. NICOLAYSEN:  Yes, Your Honor, it was done two |
| 8 | years ago. |
| 9 | THE COURT:  Okay.  All right.  So he -- I haven't |
| 10 | seen but I saw -- all right.  Thank you.  All right.  Let's go |
| 11 | for the first matter before the Court is the amended motion |
| 12 | for a hearing to address potential conflicts and what I don't |
| 13 | need is I don't need a repeat of anything that's contained in |
| 14 | the briefs. |
| 15 | So beginning with the government, is there |
| 16 | anything in addition to what's been filed that you wish the |
| 17 | Court to be aware of? |
| 18 | MR. LEON GUERRERO:  Yes, yes, Your Honor.  Thank |
| 19 | you.  Stephen Leon Guerrero.  So really, in addition to, you |
| 20 | know, the arguments that were raised in our filing, it has |
| 21 | come to our attention that there is in fact a joint defense |
| 22 | agreement amongst the defendants and that was something we |
| 23 | weren't aware of or sure of when we initially filed this |
| 24 | motion, and because we've been made aware of that, you know, |
| 25 | we're simply asking the Court to make sure that there's no, |

 1  you know, potential for conflict of interest in any way to be          09:05AM

 2  able to conduct an in camera review of that joint defense              09:05AM

 3  agreement to determine if there's any potential for conflict           09:05AM

 4  of interest.  You know, the big concern, you know, that the            09:05AM

 5  government has is, we have Defendant Hansen who wasn't a               09:05AM

 6  defendant in the initial indictment, um, is a defendant now,           09:05AM

 7  and our concern is, if Defendant Hansen is paying the legal            09:05AM

 8  fees of its co-defendants, you know, there is a potential for          09:05AM

 9  conflict of interest if one of these defendants chooses to             09:05AM

10  want to cooperate and assist the government against its                09:05AM

11  co-defendants but can't because Defendant Hansen is paying its         09:05AM

12  attorneys fees.                                                        09:05AM

13          So, you know, that is a conflict of interest that             09:05AM

14  the government is trying to avoid.  The other thing, too, is           09:05AM

15  you know, what we want to point out in addition is, you know,          09:06AM

16  we had attorney Martin who, you know, it's our position, was           09:06AM

17  representing Defendant Hansen and Defendant Walker at the same         09:06AM

18  time.  And so, you know, that was evident in the sense that            09:06AM

19  you know, now, you know, they have attorney Han who's now              09:06AM

20  representing Defendant Hansen.  But, you know, since the               09:06AM

21  indictment, you know, there's multiple layers of the potential        09:06AM

22  for conflict of interest to arise.                                     09:06AM

23          At one point, attorney McConwell, and this was                09:06AM

24  noted in our filing ECF 416, you know, we have attorney                09:06AM

25  McConwell that sought to deregister aircraft with the FAA.             09:06AM

1    And what's important to note is these aircraft that he's          09:06AM

2    looking to deregister belong to subsidiaries of Defendant          09:06AM

3    Hansen, again, who at least at one time was being represented      09:07AM

4    by attorney Martin.                                                09:07AM

5                So, you know, we have that potential conflict of       09:07AM

6    interest where attorney McConwell, in essence, representing        09:07AM

7    these Defendant Hansen subsidiaries and trying to deregister       09:07AM

8    these aircraft with the FAA.  We also have Defendant Crowe and     09:07AM

9    Defendant Crowe either has a position and/or role with these       09:07AM

10   Vanuatu subsidiaries.  And the same thing with Defendant           09:07AM

11   Crowe, he sought to deregister aircraft with the FAA, again,       09:07AM

12   creating this potential layer of a conflict, not only with         09:07AM

13   himself, but again, attorney Martin and others.                    09:07AM

14                So, you know, that -- you know, the big thing         09:07AM

15   with the government, Your Honor, bringing this motion is just      09:07AM

16   really having a hearing to ensure that, you know, we point out     09:07AM

17   the concerns that we have and, you know, the different             09:07AM

18   scenarios that we believe that there may be a potential            09:08AM

19   conflict of interest.  And, you know, ultimately, it will be       09:08AM

20   the Court to make that determination if a conflict or not even     09:08AM

21   just an actual conflict but the potential for a conflict           09:08AM

22   exists and that's merely what the government is just trying to     09:08AM

23   do, we have an obligation to bring it to the Court's attention     09:08AM

24   if we feel that there is a potential and that's what we did.       09:08AM

25   And so with those arguments, Your Honor, we submit, unless my      09:08AM

1   co-counsel, SAUSA Miller, has anything else she'd like to add.          09:08AM

2          MS. MILLER:  I do not.  I do not.  Thank you,          09:08AM

3   Your Honor.  Thank you, Stephen.          09:08AM

4          THE COURT:  All right.  Thank you.  Let me begin          09:08AM

5   with Mr. Walker's Counsel, Mr. Martin, you can go ahead and          09:08AM

6   address if you have addition to add other than what's been          09:08AM

7   filed?          09:08AM

8          MR. MARTIN:  Your Honor, I accidentally          09:08AM

9   disconnected myself, so when I picked up, Mr. Leon Guerrero          09:08AM

10  was talking about Hansen and attorney's fees being paid.          09:08AM

11  Anything before then, I didn't hear and I apologize.  I          09:09AM

12  accidentally disconnected, but let me just briefly say my          09:09AM

13  technology, Your Honor, is not that great.  Let me just --          09:09AM

14         THE COURT:  Well, let me just -- I guess, if I          09:09AM

15  can attempt to bring you up to speed, Counsel has just brought          09:09AM

16  up that there in fact exists a joint defense agreement and          09:09AM

17  then the obvious concern about the conflicts.  He referenced          09:09AM

18  Mr. McConwell may be representing subsidiaries of Hansen in          09:09AM

19  attempts at deregistration.  The Court has reviewed those          09:09AM

20  requests, the deregistrations that were filed as exhibits and          09:09AM

21  the conflicts that may be associated with that.  So that's          09:09AM

22  kind of where the government was.  Go ahead, you can then now          09:09AM

23  argue to the Court if you have anything you wish the Court to          09:09AM

24  be aware of other than what's been filed.          09:09AM

25         MR. MARTIN:  Your Honor, very briefly.  I          09:09AM

1    represent John Walker.  I don't represent Hansen, I don't    09:09AM

2    represent anyone else.  My loyalties are to John Walker.  He's    09:10AM

3    aware of that.  He's previously executed a waiver of conflict    09:10AM

4    of interest in this case as relation to all other defendants    09:10AM

5    and on behalf of Hansen, a waiver.  But there's -- I    09:10AM

6    understand -- I've been doing this for a long, long time.  I    09:10AM

7    understand what a conflict is.  And if the government wants to    09:10AM

8    make an offer to us for us to cooperate against them, I'm sure    09:10AM

9    willing to hear them.  I don't think Hansen is going to impact    09:10AM

10   my loyalty or duties to John Walker in any way shape or form    09:10AM

11   if that's a concern of theirs.  I will advise the Court that    09:10AM

12   we all do have a common defense.  Our common defense is we    09:10AM

13   haven't done anything wrong, but that doesn't create a    09:10AM

14   conflict of interest.  I think the issues are clearly set out    09:10AM

15   in the briefs filed by all the parties and I would stand on    09:10AM

16   that, Judge.    09:10AM

17          THE COURT:  All right.  Thank you, Mr. Martin.    09:10AM

18   Let me -- go ahead, I'm sorry.    09:10AM

19          (Pause.)    09:11AM

20          THE COURT:  We may have lost Mr. Martin again.    09:11AM

21          MR. MARTIN:  No, I'm here.  I'm here, Judge.  Can    09:11AM

22   you hear me?    09:11AM

23          THE COURT:  Yes, okay.  Is that it, Mr. Martin?    09:11AM

24          MR. MARTIN:  That's it, and I think my Counsel --    09:11AM

25   my client's on the phone, if you need a waiver from him, he    09:11AM

```
1   can orally do it and if we need to do another one, we're happy    09:11AM
2   to do that.                                                        09:11AM
3           THE COURT:  All right.  Let me just move up the            09:11AM
4   line.  Mr. Perez, anything on behalf of Mr. Reed?                  09:11AM
5           MR. PEREZ:  Just briefly, Your Honor.  First, we           09:11AM
6   join in the opposition filed by co-defendants in Document 415      09:11AM
7   and 417.  I would just reiterate that my loyalty as Counsel is     09:11AM
8   to Defendant Reed only.  I would also point out that Mr. Reed      09:11AM
9   also signed a waiver which was submitted to the Court              09:11AM
10  previously.                                                        09:11AM
11          I would just also submit that the government has           09:11AM
12  made no threshold showing of any conflict and I would also         09:11AM
13  just point out that the issue regarding the conflict based         09:11AM
14  upon payment of fees was raised previously by the government       09:11AM
15  addressed by this Court with Judge Manibusan and was denied        09:11AM
16  back then and this is the same issue that's being raised again     09:12AM
17  and I have nothing further to add other than that.                 09:12AM
18          THE COURT:  All right.  Mr. Pole, anything to add          09:12AM
19  on behalf of Mr. Rogers?                                           09:12AM
20          MR. POLE:  Your Honor, I would just add that of            09:12AM
21  course, again, my loyalty is to Mr. Rogers and he's only on        09:12AM
22  one count.  So that even if there was a conflict for the other     09:12AM
23  defendants, which we don't see, it wouldn't be imputed to my       09:12AM
24  client, Your Honor.                                                09:12AM
25          THE COURT:  All right.  On behalf of Mr. Kapp,             09:12AM
```

1  Mr. McConwell or Tony?                                    09:12AM

2         MR. MCCONWELL:  This is Mr. McConwell, Your        09:12AM

3  Honor.  I join in that.  My loyalty is to Mr. Kapp.  He's also  09:12AM

4  waived any potential conflict.  I do not believe there's a  09:12AM

5  conflict with regard to the administrative matters we've been  09:12AM

6  dealing with, with regard to the FAA enforcement case or the  09:12AM

7  letter, or e-mail that you got from me to another Counsel in  09:12AM

8  this case urging them to go ahead and allow deregistration.  I  09:13AM

9  might point out to you they have blocked every deregistration  09:13AM

10 of aircraft in the registry right now and I think they have  09:13AM

11 something like 58 hold orders, so they're trying to block  09:13AM

12 deregistration by Hansen of the right to deregister their  09:13AM

13 aircraft.  But my client has no objection to the network that  09:13AM

14 I've done for the Vanuatu corporations and has executed the  09:13AM

15 waiver.                                                    09:13AM

16        THE COURT:  All right.  Thank you, Mr. McConwell.  09:13AM

17 On behalf of Mr. Crowe, Mr. Nicolaysen?                    09:13AM

18        MR. NICOLAYSEN:  Yes, thank you, Your Honor, Greg  09:13AM

19 Nicolaysen from Los Angeles speaking on behalf of Mr. Crowe  09:13AM

20 together with my co-Counsel David Lujan.  Your Honor, I ask  09:13AM

21 the Court to take note as our papers mention of the waiver of  09:13AM

22 conflicts filed on February 22nd of 2019, PACER            09:13AM

23 Document 2-0-4.  That waiver resolves any issue of any      09:14AM

24 potential conflict and there certainly was no actual conflict  09:14AM

25 that was being raised by the government in its initial filing  09:14AM

1   back in 2018. And so looking at February of 2019 forward in    09:14AM

2   time up to the present time, the government has not addressed    09:14AM

3   any circumstance that would suggest that during the period    09:14AM

4   subsequent to the filing of the conflict waivers, which Judge    09:14AM

5   Manibusan accepted, there has been anything to raise divided    09:14AM

6   loyalties or any other type of conflict in regard to the    09:14AM

7   representation of Mr. Crowe. And in my view, that this is    09:14AM

8   simply, as our papers argue, an effort to delay the trial.    09:14AM

9           In regard to the filing of the amended motion,    09:14AM

10   it's all in our papers, I won't repeat the argument here, but    09:14AM

11   there is certainly no basis for any type of conflict inquiry    09:15AM

12   or even for the filing of a supplemental waiver. There is no    09:15AM

13   need for any additional waiver in regard to Mr. Crowe.    09:15AM

14           THE COURT: All right. Thank you,    09:15AM

15   Mr. Nicolaysen. I apologize for butchering your name but I    09:15AM

16   think I got it now.    09:15AM

17           MR. NICOLAYSEN: No, it's fine.    09:15AM

18           THE COURT: Mr. Han, on behalf of Hansen    09:15AM

19   Helicopters, anything -- because you're -- I guess the amended    09:15AM

20   complaint that is now Hansen formally as a defendant.    09:15AM

21           MR. HAN: Yes, Your Honor. Um, nothing else to    09:15AM

22   add except the fact that I'd be loyal to the Hansen    09:15AM

23   Helicopters, the corporation.    09:15AM

24           THE COURT: All right. Thank you.    09:15AM

25           MR. LEON GUERRERO: Your Honor, this is AUSA Leon    09:15AM

| | |
|---|---|
| 1 | Guerrero, just a brief rebuttal. | 09:15AM |
| 2 | THE COURT:  Okay.  Go ahead. | 09:15AM |
| 3 | MR. LEON GUERRERO:  Now, I would say that the, | 09:15AM |
| 4 | you know, the circumstances have changed and really those | 09:15AM |
| 5 | waivers that were previously submitted to the Court are | 09:15AM |
| 6 | outdated because at the time, Defendant Hansen was not a | 09:16AM |
| 7 | co-defendant in the case.  So I would say that the | 09:16AM |
| 8 | circumstances have changed and really those -- the initial | 09:16AM |
| 9 | waivers that were provided to the Court really are no longer | 09:16AM |
| 10 | pertinent and they're outdated, given the current superseding | 09:16AM |
| 11 | indictment. | 09:16AM |
| 12 | THE COURT:  All right. | 09:16AM |
| 13 | MR. NICOLAYSEN:  Your Honor, on behalf of | 09:16AM |
| 14 | Mr. Crowe, I'd like to respond since it was in response to my | 09:16AM |
| 15 | comment.  The government has an obligation to make a prima | 09:16AM |
| 16 | facie showing that there is a reason to be concerned about a | 09:16AM |
| 17 | serious potential for conflict or an actual conflict.  The | 09:16AM |
| 18 | mere fact that the corporate entity was not a defendant at the | 09:16AM |
| 19 | time the original conflict waivers were filed in February 2019 | 09:16AM |
| 20 | and we now have the corporate defendant in this case, that is | 09:16AM |
| 21 | not a sufficient change of circumstance to suggest that there | 09:16AM |
| 22 | are divided loyalties that would warrant further inquiry.  And | 09:17AM |
| 23 | the government needs to demonstrate that there is some basis | 09:17AM |
| 24 | for divided loyalties sufficient to conduct further inquiry in | 09:17AM |
| 25 | camera or otherwise.  If the Court wishes to conduct further | 09:17AM |

1   inquiry, I would recommend that that be done outside the       09:17AM

2   government's presence and the Court can take oral waivers by     09:17AM

3   phone at this hearing in an under-seal proceeding and we can     09:17AM

4   have it resolved now.  I don't think it's necessary, but I      09:17AM

5   think the defendants would be prepared to do that if the Court   09:17AM

6   feels that the need has arisen for a supplemental waiver.        09:17AM

7           THE COURT:  No, the Court has reviewed the             09:17AM

8   defendants' briefs and also the arguments with respect to the   09:17AM

9   nature of the initial investigation and the government's        09:17AM

10  awareness certainly since 2015 of the involvement of -- well,    09:17AM

11  the newest defendant, Hansen Helicopters, and that the          09:17AM

12  investigation really was -- was -- was geared towards them      09:17AM

13  from the beginning.                                             09:18AM

14          The Court, I think, just needs to remind the           09:18AM

15  lawyers to, you know, I'm sure the lawyers are aware of their    09:18AM

16  duty under Rule 1.8 and just make sure that you guys remain in   09:18AM

17  compliance with the rules and everybody's affirmatively stated   09:18AM

18  their loyalty to their specific client -- the insistence of a    09:18AM

19  defense agreement and whether or not compensation may or may     09:18AM

20  not be coming from -- from -- from persons other than their      09:18AM

21  client.  So let's just make sure we remain cognizant of that     09:18AM

22  and remain in compliance with that as well as 1.6 dealing with   09:18AM

23  confidentiality with respect to your individual client.  Okay?   09:18AM

24  I don't think the Court needs to be concerned with that.  The    09:18AM

25  second motion before the Court is -- so the Court will take      09:18AM

| | |
|---|---|
| 1 | that matter under advisement and will issue an order as soon | 09:18AM |
| 2 | as possible. | 09:18AM |
| 3 | The other motion before the Court is motion for | 09:19AM |
| 4 | protective order by the government to schedule an inspection | 09:19AM |
| 5 | and to prevent harassment of the witnesses.  Again, the Court | 09:19AM |
| 6 | has reviewed all the documents that have been filed | 09:19AM |
| 7 | previously.  Mr. Leon Guerrero or Ms. Martin [sic], is there | 09:19AM |
| 8 | anything the government wishes to add with respect to that | 09:19AM |
| 9 | motion? | 09:19AM |

1   that matter under advisement and will issue an order as soon          09:18AM
2   as possible.                                                          09:18AM
3          The other motion before the Court is motion for                09:19AM
4   protective order by the government to schedule an inspection          09:19AM
5   and to prevent harassment of the witnesses.  Again, the Court         09:19AM
6   has reviewed all the documents that have been filed                   09:19AM
7   previously.  Mr. Leon Guerrero or Ms. Martin [sic], is there          09:19AM
8   anything the government wishes to add with respect to that            09:19AM
9   motion?                                                               09:19AM
10         MS. MILLER:  Yes, Your Honor, this is Marie                    09:19AM
11  Miller, can you hear me?                                              09:19AM
12         THE COURT:  I'm sorry, Ms. Miller, I apologize.                09:19AM
13         MS. MILLER:  Oh, that's okay.  Can you hear me                 09:19AM
14  okay?                                                                 09:19AM
15         MR. MARTIN:  Your Honor, may I interject                       09:19AM
16  something first?                                                      09:19AM
17         THE COURT:  And who is this?                                   09:19AM
18         MR. MARTIN:  This is Mr. Martin, Your Honor.  I                09:19AM
19  represent Mr. Walker.  I had a suggestion about this motion if        09:19AM
20  I might interject and then if you want to proceed, that's             09:19AM
21  fine.                                                                 09:19AM
22         THE COURT:  Go ahead.                                          09:19AM
23         MR. MARTIN:  That the government has also filed,               09:19AM
24  issued 62 subpoenas for the production of these same identical        09:19AM
25  helicopters addressing almost the same issues, and rather than       09:19AM

1    being repetitive, I was going to suggest we might set both

2    arguments for the same time at a later date, because the same

3    issues will virtually be addressed in those arguments that are

4    going to be addressed here.  And if the Court wants to

5    proceed, that's fine, but I wanted to make that suggestion.

6              THE COURT:  So Ms. Miller, what is the briefing

7    period -- I assume, Mr. Martin, you're referring to a motion

8    to quash the subpoenas then, there's a motion to quash that's

9    pending; is that correct?

10             MR. MARTIN:  That's correct, Your Honor.

11             THE COURT:  Does anybody know what the briefing

12   schedule is for that?  I don't know it off hand.

13             MS. MILLER:  Your Honor, there isn't anything

14   scheduled yet in terms of hearing that motion and the

15   government does not concede that the Rule 16 motion is the

16   same as the Rule 17 motion.  Those are two distinct procedural

17   processes and it is inappropriate to say that they should be

18   argued and heard at the same time.  The motion for a

19   protective order is a critical motion that should be heard and

20   ruled on by the Court as soon as possible and since we have

21   this hearing time and no one has before now recommended that

22   we move it and combine it with the Rule 17 motion and I

23   suggest we do go forward, Your Honor.

24             THE COURT:  All right.  Go ahead, Ms. Miller,

25   then.  Mr. Martin, we'll hear the argument and go from there.

|   |   |
|---|---|
| 1 | MS. MILLER:  Thank you, Your Honor.  So I know | 09:21AM |
| 2 | Your Honor does not want to hear anything that has already | 09:21AM |
| 3 | been previously filed.  I will however bring something to the | 09:21AM |
| 4 | Court's attention that the Court may not be fully aware of: | 09:21AM |
| 5 | Number one, the FAA has tried to inspect these | 09:21AM |
| 6 | helicopters 29 times.  There are 29 letters that have gone | 09:21AM |
| 7 | from the FAA to the defendants seeking repeatedly to inspect | 09:21AM |
| 8 | these helicopters to ensure that they are safe and air-worthy. | 09:21AM |
| 9 | One of those requests was on Helicopter N No. | 09:21AM |
| 10 | 9068-F, as in Frank.  And that particular aircraft was one | 09:22AM |
| 11 | that crashed and killed a pilot on September 3rd of 2015.  And | 09:22AM |
| 12 | the defendants continue to refuse to produce the helicopters | 09:22AM |
| 13 | for inspection by the FAA for years, making numerous excuses | 09:22AM |
| 14 | similar to the excuses that they made in response to the | 09:22AM |
| 15 | government's motion here, that it would be too difficult to | 09:22AM |
| 16 | pull the helicopters in, that it is too challenging, that is | 09:22AM |
| 17 | it would cost them too much money, and our response is, too | 09:22AM |
| 18 | bad.  The defendants actually are the ones who sought the | 09:22AM |
| 19 | registration of all of these helicopters by the FAA.  And when | 09:22AM |
| 20 | they sought that registration by the FAA, they certified under | 09:22AM |
| 21 | penalty of perjury that they were seeking the registration to | 09:22AM |
| 22 | comply with all of the FAA rules and conditions, and since | 09:23AM |
| 23 | then, they have done anything but comply with those rules and | 09:23AM |
| 24 | conditions. | 09:23AM |
| 25 | In this particular case, Your Honor, there has | 09:23AM |

*Criminal Case No. 18-00010, USA v. Walker, et al.*

1  been a plea agreement entered into by an FAA inspector who          09:23AM

2  admitted to his role in the honest services fraud and his role      09:23AM

3  in issuing 30 airworthiness certificates, 3-0, to these             09:23AM

4  defendants, without having actually conducted a proper              09:23AM

5  inspection of either the aircraft or the legitimate paperwork       09:23AM

6  tied to the aircraft.                                               09:23AM

7          Another thing that Your Honor hasn't seen in the          09:23AM

8  pleadings is that there have been nine deaths associated with       09:23AM

9  Hansen-owned helicopters, six serious injuries associated with      09:23AM

10 Hansen-owned and -operated helicopters.  We know that the           09:23AM

11 defendants have, "deregistered" and "reregistered" aircraft in      09:24AM

12 the Philippines before.                                             09:24AM

13          For example, Your Honor, one of the aircraft,             09:24AM

14 N369TG, Mr. Crowe said that Echo Air owned that aircraft.           09:24AM

15 Echo Air is one of the numerous Vanuatu corporations created        09:24AM

16 by the defendants for, according to them, insurance purposes.       09:24AM

17 And despite the fact that Mr. Crowe indicated to the FAA that       09:24AM

18 that aircraft is owned by Hansen outright and, therefore,           09:24AM

19 Hansen has the right to deregister it and to reregister it in       09:24AM

20 the Philippines, the FAA also has certification from Venezuela      09:24AM

21 that that identical aircraft is registered there by a third        09:24AM

22 party.  Every single helicopter was registered with the FAA.       09:24AM

23 And another example is N444GJ.  Every single request for           09:25AM

24 paperwork regarding that aircraft, even though it was               09:25AM

25 allegedly a Vanuatu-owned aircraft, the defendants asked that       09:25AM

1  all that paperwork be sent to Guam and this is something that  09:25AM

2  they've done over and over and over again.  09:25AM

3          We have a letter that we produced to you, Your  09:25AM

4  Honor, from the Philippines, indicating -- not only from the  09:25AM

5  Philippines by the way, Your Honor, from Vanuatu, from  09:25AM

6  Palawan, confirming that the aircraft that the defendants  09:25AM

7  ostensively deregistered here to reregister there were never  09:25AM

8  in fact registered or their registrations were allowed to fail  09:25AM

9  in the case of the Philippines.  09:25AM

10         I submitted to the Court yesterday an exhibit  09:25AM

11  just to show you and to provide you with an example of just  09:26AM

12  how outrageous the defendants' conduct is in relation to this  09:26AM

13  particular case.  The defendants submitted an exhibit in  09:26AM

14  support of their motion to dismiss that the defendants  09:26AM

15  represented was an exhibit relating to aircraft N831FG.  But  09:26AM

16  what the defendants did was they only submitted to the Court  09:26AM

17  part of the file on N831FG.  They submitted an export letter  09:26AM

18  requesting deregistration of that aircraft.  They submitted a  09:26AM

19  deregistration confirmation.  They submitted a letter from the  09:26AM

20  FAA registering the aircraft after the export request and then  09:26AM

21  the registration from the FAA.  What they did not submit to  09:26AM

22  this Court was a statement of the whereabouts of that aircraft  09:26AM

23  showing that that aircraft never left Guam, despite the  09:27AM

24  representations to the government that it was being exported.  09:27AM

25  What they didn't produce to the Court was a letter from  09:27AM

---

*Criminal Case No. 18-00010, USA v. Walker, et al.*

Mr. Walker requesting the FAA registration after that aircraft

was supposedly exported but we know it was never exported, nor

did they produce to the Court another letter to the FAA,

indicating that they were waiting for Vanuatu to confirm that

the helicopter was never registered there and then they also

didn't produce to the Court the Vanuatu confirmation that the

aircraft was never registered there.  We have letters from the

defendants going to the FAA over the last ten years, talking

about aircraft being exported, then saying, no, we never

exported this aircraft, and meanwhile, the aircraft is in

registration limbo, but we know, based on the information we

received from the defendants, that these helicopters are

making them millions of dollars a year, despite the fact that

they have not been properly inspected.

Finally, Your Honor, they want to ostensively

remove the aircraft to the Philippines but we also produced a

document for you from the Philippines referring to the

defendants' utter defiance of civil aviation law and disregard

of their responsibilities to the Philippines equivalent of the

FAA as they have here.

Your Honor, you have the authority under Rule 16

of the Federal Rules of Criminal Procedure to enter a

protective order to allow the inspection of these helicopters

and also to assure that they are not deregistered and not

moved outside of the jurisdiction of the United States.  When

1  you consider what has happened in this case and how the

2  defendants have repeatedly, repeatedly lied to the FAA and

3  misrepresented and they are still using these helicopters to

4  transport pilots and mechanics, putting all these individuals

5  in danger, we ask this Court to exercise your jurisdiction

6  under the rule and under the case law that we cited to grant

7  the motion for a protective order, to require the defendants

8  to finally bring these helicopters back to Guam for a proper

9  inspection by the government and to make them available to the

10  government.  And I don't wish to add anything else other than

11  what was already previously filed with the Court regarding the

12  witness tampering, any other issues.  Thank you, Your Honor.

13          THE COURT:  All right.  Let's -- Mr. Martin, on

14  behalf of Mr. Walker?

15          MR. MARTIN:  Yes, Your Honor, thank you very

16  much.  Your Honor, I'm not sure that the government

17  understands the purpose of Rule 16 discovery.  They asked for

18  discovery in this criminal case.  They don't represent the

19  Department of Transportation, they don't represent the FAA,

20  they don't represent the Federal Bureau of Investigation, they

21  don't represent Mr. Cislo, who's their star witness that they

22  talk about in this case.  Their one -- their alleged purpose

23  for this is for safety and airworthiness and they talk about

24  29 letters that have been sent ten years ago before I was even

25  involved in this case.  They admit they sent me one letter

1    that was attached to my motion.  I believe it was                  09:30AM

2    December 12th saying, "Please tell us when we can inspect          09:30AM

3    these helicopters" and I responded to the letter, I asked them     09:30AM

4    to tell me what authority they had to do that.  I said if you      09:30AM

5    got a problem with it, we'll take it up with Judge Gatewood or     09:30AM

6    call me on the phone.  Neither one of those occurred.  They        09:31AM

7    didn't call me, we didn't take it up with Judge Gatewood.  I       09:31AM

8    figured they realized that they didn't have the authority to       09:31AM

9    do that, so we went on.                                            09:31AM

10           Secondly, they talk about the case law in support          09:31AM

11   of their motion for protective order.  They cited no case law,     09:31AM

12   Your Honor.  Rule 16 doesn't -- the way I read the rule,           09:31AM

13   doesn't give the government the authority to come in and           09:31AM

14   inspect evidence that -- for materials that -- in a case,          09:31AM

15   unless we're going to use it and I, in my motion said, we're       09:31AM

16   not going to produce any helicopters, we're not going to use       09:31AM

17   any helicopters at trial so we shouldn't -- we shouldn't           09:31AM

18   produce it.                                                        09:31AM

19           Thirdly, Your Honor, the thing that offends me             09:31AM

20   the most, and I use that word very lightly, is the personal        09:31AM

21   attacks on lawyers.  The government has misrepresented in          09:31AM

22   their motions things that my co-Counsel have been involved in,     09:31AM

23   in this case.  In particular, in reference to Mr. Cislo, they      09:32AM

24   make blatant allegations that Mr. McConwell confronted and         09:32AM

25   accosted Mr. Cislo, which did not occur.  The government           09:32AM

1  finally in January provided to us a 302 that's been identified  09:32AM

2  as FBI Hansen Document No. 046383, where during a proffer  09:32AM

3  session, the government alleged that Mr. McConwell confronted  09:32AM

4  him inside his hangar.  Mr. Cislo, and I'm reading from the  09:32AM

5  FBI 302 itself now, says "On Saturday, July 14th, a male  09:32AM

6  individual initiated contact with Cislo outside, outside of  09:32AM

7  his private hangar."  I made representations to the Court, as  09:32AM

8  an officer of the Court, quite honestly, what occurred by mere  09:32AM

9  happenstance on July 14th, and for them to make some type of  09:33AM

10  outrageous allegations that he tried to talk to him and he  09:33AM

11  tried to confront him about the case, he didn't intimidate him  09:33AM

12  at all, Your Honor.  Mr. Cislo doesn't say that.  Mr. Cislo  09:33AM

13  says -- even mentions that Mr. McConwell advised him that he  09:33AM

14  attempted to contact Cislo's attorney, they did not receive a  09:33AM

15  reply, consistent with exactly what I put in the motion, Your  09:33AM

16  Honor.  No Counsel in this case has done anything  09:33AM

17  inappropriate.  And I find it kind of offensive that the  09:33AM

18  government would allege that there's something done  09:33AM

19  inappropriate by any Counsel.  There's no basis for a  09:33AM

20  protective order.  We all know the rules of ethics in this  09:33AM

21  case just like we know the rules relating to a conflict of  09:33AM

22  interest.  I ask the Court to deny the government's motion,  09:33AM

23  Your Honor.  09:33AM

24          THE COURT:  All right.  Thank you, Mr. Martin.  09:33AM

25  Mr. Nicolaysen, anything to add?  09:33AM

1          MR. NICOLAYSEN:  Yes, Your Honor.  Thank you.         09:33AM

2     Rule 16 is a very narrow and specific rule in criminal       09:34AM

3     proceedings.  It deals with discovery by both sides.  The    09:34AM

4     issuance of protective orders provide restrictions under     09:34AM

5     Rule 16 that focus on the production of information by the    09:34AM

6     government typically by which parameters are being established  09:34AM

7     regarding the use of such evidence by the parties and we have  09:34AM

8     these protective orders in gang cases, identity theft cases,  09:34AM

9     etc., which is all about regulating how evidence is going to  09:34AM

10    be managed and used by the parties.                          09:34AM

11          When the government seeks a protective order with       09:34AM

12    respect to the defense, that protective order under Rule 16   09:34AM

13    must be tailored to defense evidence.  That's not what's      09:34AM

14    happening here.  I'll give an example.  If the defendants     09:34AM

15    designated as a trial exhibit, a particular FAA-approved part  09:34AM

16    that was used on the helicopters during the time period of the  09:35AM

17    indictment, 2012 up to May 2018 when the first indictment was  09:35AM

18    filed, and we are going to be having testimony at trial       09:35AM

19    regarding that part, part of our presentation regarding       09:35AM

20    helicopters, then the Court would be well within its rights   09:35AM

21    and the government likewise, to direct the defense to make    09:35AM

22    that part available for inspection because that part is now   09:35AM

23    being designated by the defense as a trial exhibit.  Now      09:35AM

24    that's not happening -- the defense is not going to be        09:35AM

25    designating helicopters as defense exhibits.  That's just not  09:35AM

1   going to happen.  And therefore, the helicopters, which are
2   the subject of this motion, do not fall within the purview of
3   Rule 16.  They are not reciprocal discovery from the defense
4   to the government and the Court cannot issue any protective
5   orders with regard to those helicopters because those
6   helicopters simply don't fall within the parameters of Rule 16
7   and the government has made it clear in its filings, and as
8   recently as yesterday in Document 460, that their motion for
9   protective order is being brought under Rule 16.  It's
10  referred to as, "the government's Rule 16 motion."  So
11  therefore, the request by the government for (background
12  noise) to inspect the helicopters, order directing Hansen not
13  to transfer these helicopters as part of some sort of a
14  protective order, all of that has to be justified within the
15  very narrow and specific criteria of Rule 16, and because the
16  helicopters don't fall within Rule 16, they are not reciprocal
17  discovery, they are not going to be trial exhibits, this
18  Court, and I say this with respect, has no authority to order
19  any inspection.  And what the government is doing, is arguing
20  its case as if it were before an administrative body.  Marie
21  Miller is from the Department of Transportation, she's well
22  versed in FAA administrative procedures and the arguments that
23  she has presented here, which pertain to which she considers
24  safety issues, that there have been numerous requests to
25  inspect, that in her judgment have been ignored, and so on all

1    of that, goes to the issue of the FAA and the regulatory     09:37AM

2    agency having the authority to suspend or revoke             09:37AM

3    registrations, suspend or revoke airworthiness certificates.  09:37AM

4    That's the power of a regulatory agency, same thing with the  09:37AM

5    FDA over a drug company, the ACF over a gun manufacturer and   09:37AM

6    so on.  The arguments presented by Ms. Miller are suited for   09:37AM

7    the administrative environment where Hansen or whoever would   09:37AM

8    be, you know, deemed the appropriate owner of the helicopters, 09:38AM

9    would be subject to some administrative sanction for failing   09:38AM

10   to satisfy the safety and other obligations including making   09:38AM

11   the helicopters available for inspection.  That's an          09:38AM

12   administrative issue.  That has nothing at all to do with the  09:38AM

13   criminal proceeding or the narrow criteria under Rule 16.  And 09:38AM

14   I should emphasize that these helicopters, the vast majority   09:38AM

15   of the ones that's listed in the superseding indictment, which 09:38AM

16   for round numbers -- let's just use the number sixty, the vast 09:38AM

17   majority of these helicopters have valid registrations and     09:38AM

18   valid airworthiness certificates.  In fact, registrations have 09:38AM

19   three-year time tables and if Your Honor goes to www.faa.gov   09:38AM

20   and you have the superseding indictment in front of Your Honor 09:38AM

21   that has the table and all of these N numbers of the sixty     09:38AM

22   helicopters and you just start typing these N numbers into the 09:39AM

23   search engine on the home page, you'll get the profile of the  09:39AM

24   helicopters and you will see that the vast majority of them    09:39AM

25   have valid registrations.  Well, in fact, valid registrations  09:39AM

that expire either this year, 2021, even 2022.  That means the    09:39AM
FAA has been renewing these registrations during the period of    09:39AM
the investigation of this case which goes back at least to    09:39AM
2015 and earlier, and during the prosecution of this case.    09:39AM

So when the government complains, as it does,    09:39AM
that the helicopters are unsafe, and that we have refused    09:39AM
inspections, those administrative arguments should be directed    09:39AM
to the FAA as part of a claim that maybe the registrations    09:39AM
should not have been renewed, maybe they should be suspended    09:39AM
or revoked.  But this is a motion under Rule 16 and none of    09:39AM
the arguments the government has presented in its papers or    09:39AM
here today orally have any relevance whatsoever to Rule 16.    09:39AM

Let me just close by speaking about the    09:40AM
chronology of the superseding indictment.  If Your Honor goes    09:40AM
through the superseding indictment with an eye to the time    09:40AM
periods of the different counts, and if the Court please, I'll    09:40AM
be glad to do it, I have yellow highlighted it so I could    09:40AM
recite all the paragraphs in the superseding indictment.  Your    09:40AM
Honor will see that the government has consistently framed the    09:40AM
chronology of this prosecution from year 2012 up through May    09:40AM
of 2018, which is the doorstep of the filing of the initial    09:40AM
indictment, which was filed on May 31, 2018.    09:40AM

The superseding indictment, which was filed in    09:40AM
December 2019, a year and a half later, has one substantive    09:40AM
count that has to do with registrations that they claim was,    09:40AM

you know, improperly done on June 10th of 2018, a couple of

weeks after the first indictment.  But other than that one

ministerial charge, the entire superseding indictment is based

on the same chronology as the original indictment, which

doesn't go beyond May of 2018, and of course we are now in May

of 2020, two years later.

So the government cannot properly argue that

there is anything about the current helicopters that are

flying that has any relevance to the charges in the

indictment.  There is no allegation of continuity of

misconduct, or that the charged conspiracy are ongoing

conspiracies.  It'd be very different in a RICO case.  We've

all seen RICO cases where, let's just use a gang or a mafia

family where the defendants are on trial as members of a RICO

enterprise that is still in existence through the ongoing

prosecution and all the way up through a trial.  And so when

the mob family bosses in New York are on trial for being a

member of -- you know, being a leader of the Gambino family,

while they're in trial and while the prosecution is ongoing,

the RICO enterprise is considered to be still active.  And so

it's still ongoing criminal activities.  That's one of the key

centers between RICO and conspiracy.  Conspiracy, as we see in

this case, has bookends; it has a beginning and an end.  And

it's critical to recognize that the government is seeking to

have Court orders issued for inspections that the Court is not

1    authorized to issue, but the government is misunderstanding          09:42AM

2    that today's helicopters have nothing to do with the time            09:42AM

3    frame of the charge, because there's no allegation of any            09:42AM

4    continuity of misconduct, that there's any crime being               09:42AM

5    committed in 2020 that is relevant to the charge in this case,        09:42AM

6    unless the government is planning to supersede.  And if they          09:43AM

7    are, I ask the government through Your Honor, tell us now so          09:43AM

8    that we understand that; otherwise, based on chronology alone,        09:43AM

9    the concept of inspection is completely irrelevant because of        09:43AM

10   the two-year lapse between May of 2018 when the indictment           09:43AM

11   charges them and May of 2020, which is where we are today.           09:43AM

12   Those are my arguments to Your Honor and I would ask that the         09:43AM

13   government's motion be denied.                                        09:43AM

14            THE COURT:  All right.  Mr. Perez or                         09:43AM

15   Mr. McConwell on behalf of Defendant Kapp, anything to add?          09:43AM

16            MR. PEREZ:  Your Honor, I join in the opposition             09:43AM

17   of 422, 424, 428 and 434 and we rest on those as well as the         09:43AM

18   oral arguments presented by Mr. Martin and Mr. Nicolaysen.          09:43AM

19            MR. MCCONWELL:  This is Edward McConwell, Your               09:43AM

20   Honor, if I could respond a little bit here.  I could respond        09:43AM

21   to everything that Ms. Miller said and believe me, she's only       09:43AM

22   told you a fraction of the story in this matter.  There is          09:44AM

23   issues that she just brushed over and not given you the whole       09:44AM

24   story.                                                               09:44AM

25            One example you may not be aware of, but there's            09:44AM

1    a motion to dismiss on lack of jurisdiction that's pending

2    right now, it's been filed before the Court dealing with the

3    validity or invalidity of the airworthiness cert -- or the

4    registration certificates themselves.

5            MR. MILLER:  Your Honor, I'm sorry to interrupt

6    but I'm going to object to Mr. McConwell arguing anything

7    relating to the motion to dismiss.  I didn't ignore it.  We're

8    not here to argue it.

9            THE COURT:  All right.

10           MR. MCCONWELL:  I'm bringing the matter to the

11   Court's attention.  I wasn't going to argue it, but I do want

12   to give one example of something she did bring up that is very

13   important in this case.  She highlights 9068 Fox Trot.  Now,

14   that's an aircraft that had an accident in September of 2015

15   and the Court -- the FAA was aware as of that time and

16   actually back in April of 2015 of an issue with regard to the

17   validity or invalidity to the aircraft registrations.  They

18   acknowledged in their search warrant affidavit with regard to

19   the search warrant that was issued from Guam by Judge

20   Manibusan that 9068 Fox Trot was registered in the Philippines

21   and because of that, and because of international law, that

22   was an invalid registration, and at that point, absolutely

23   knew they did not have jurisdiction over that aircraft, yet

24   they plowed ahead and ignored the fact they didn't have

25   jurisdiction with regard to that aircraft and the

investigation that ensued from that, but it goes to the entire 09:45AM
line of Vanuatu corporations. They were totally aware of the 09:45AM
existence of them, the number and that they were foreign 09:45AM
corporations. That is implications that we'll be dealing with 09:46AM
later. I'm not going to go through everything she said. 09:46AM
There is a different story. There's more evidence that would 09:46AM
be -- would neutralize the thing that she said and we could 09:46AM
explain it to you, but it would take too long to do that. 09:46AM

But I do want to go back to the Mr. Cislo thing 09:46AM
at the airport. Mr. Cislo did not tell the truth to the FBI 09:46AM
agents and that was an accidental meeting that occurred. We 09:46AM
had no idea that he was going to even be there, didn't even 09:46AM
knew he was. But for the way that has been misrepresented to 09:46AM
the Court is very offensive and Mr. Martin's already spoke on 09:46AM
my behalf and that's all I'm going to say about that, but I 09:46AM
join in the pleadings that have been filed in this matter and 09:46AM
ask that the motion for protective order be denied. 09:46AM

And I do have my question for you, my 09:46AM
understanding, and I've been doing this for over 50 years, 09:46AM
that a lawyer has the ability to be able to interview 09:47AM
witnesses that are identified by the government or the 09:47AM
plaintiff or the adverse party. The government seems to say 09:47AM
that we can't do that and our clients are not supposed to by 09:47AM
their conditions of release, but the lawyers and we have 09:47AM
ethical standards we have to follow, that we've done nothing 09:47AM

wrong and there seems -- seems to say we did and I'd like to 09:47AM

know whether we are allowed to interview witnesses.  I will 09:47AM

tell you that I had one witness in this case say that he was 09:47AM

told not to talk to anybody, including their lawyers, and that 09:47AM

appeared to come from the government. 09:47AM

THE COURT:  All right.  Thank you, Mr. McConwell. 09:47AM

Mr. Pete Perez, Jr., on behalf Mr. Reed?  Anything? 09:47AM

MR. PEREZ:  No, Your Honor. 09:47AM

THE COURT:  All right.  Mr. Pole, on behalf of 09:47AM

anything -- Mr. Rogers, anything you wish to add? 09:47AM

MR. POLE:  Your Honor, just two things, one, we 09:47AM

continue to object and have objected to the government's 09:48AM

painting the defendants as being -- all defendants being in 09:48AM

control of the helicopters.  As we have pointed out and it's 09:48AM

as well clear from the superseding indictment, Mr. Randy 09:48AM

Rogers has no authority over those helicopters and has nothing 09:48AM

to do with those helicopters and shouldn't be painted with a 09:48AM

stroke as the government is trying to do here or in trial. 09:48AM

The only other thing I'd like to point out, Your 09:48AM

Honor, obviously while we join with all other defendants in 09:48AM

the motion, we're primarily concerned with the issue of the 09:48AM

right to interview witnesses and I just wanted to point out 09:48AM

that one of the cases that was cited was *United States versus* 09:48AM

*Brumel-Alvarez,* which is 991 F.2d 1452, and the reason I want 09:48AM

to point out is that was decided by the Ninth Circuit in 1993 09:48AM

1   that found a *Brady* violation where the government failed to   09:48AM

2   provide a DEA memo about one of their star witnesses on --   09:49AM

3   asking for the truth and I just want to point out that even   09:49AM

4   though that was 1993 and therefore before the U.S. Supreme   09:49AM

5   Court in *Kyles v. Whitley*, 514 U.S. 419, which wasn't decided   09:49AM

6   until 1995, that case is still consistent with the U.S.   09:49AM

7   Supreme Court that said that issues of *Brady* must be provided   09:49AM

8   to defense Counsel and is not that it is grounds for   09:49AM

9   dismissal.  I think -- but we absolutely have a right to   09:49AM

10   interview witnesses to receive information and the government   09:49AM

11   provided nothing to suggest that even if this Court has the   09:49AM

12   right to sanction one defense attorney for alleged misconduct,   09:49AM

13   that it would have a right to sanction all defense attorneys   09:49AM

14   for the same misconduct and not allow for a proper defense,   09:49AM

15   that is, the interviewing of witnesses.  I have nothing   09:49AM

16   further to add, Your Honor.   09:49AM

17         THE COURT:  Thank you, Mr. Pole.  Mr. Han,   09:49AM

18   anything on behalf of Hansen Helicopters other than what's   09:50AM

19   been argued?   09:50AM

20         MR. HAN:  Nothing to add, Your Honor.   09:50AM

21         THE COURT:  All right.  Ms. Miller, briefly in   09:50AM

22   response to the arguments you heard from defense.   09:50AM

23         MS. MILLER:  Yes, Your Honor.  First of all,   09:50AM

24   Mr. Martin actually said the letters that the government sent   09:50AM

25   to us were ten years old, that's absolutely not true.  We have   09:50AM

been sending them letters as recently as last year requesting 09:50AM

inspection of these helicopters.  I have letters dated April 09:50AM

29, 2015, June 23, 2015, July 8, 2015, then we can 09:50AM

fast-forward to May 20, 2016, July 20, 2016.  Let's move 09:50AM

ahead, May 14, 2018, July 2nd, 2019.  I can go on and on, Your 09:50AM

Honor, but the point is that is absolutely a misstatement of 09:50AM

fact. 09:51AM

The second thing is, Mr. Martin said that the 09:51AM

government doesn't understand Rule 16 and I would disagree 09:51AM

with that and I would also state the defense Counsel has 09:51AM

basically just kind of skirted over the explicit language of 09:51AM

Rule 16 which says that this Court has the authority to 09:51AM

require the defendant to permit inspection by the government 09:51AM

of tangible objects and it's not only those objects that the 09:51AM

defendant intends to use in its case in chief because, again, 09:51AM

a third misstatement by defense Counsel, which is that the 09:51AM

government cited -- case law, the government did cite 09:51AM

substantial case law to support its position, including case 09:51AM

law that indicates that if the defendant intends to 09:51AM

cross-examine any of the government's witnesses in a criminal 09:51AM

case regarding evidence, that the government is entitled to 09:52AM

view that evidence.  It is not a violation of the defendant's 09:52AM

Fifth Amendment privilege against self-incrimination and it is 09:52AM

not necessary that the defendants use that evidence in their 09:52AM

case in chief.  And all that case law was cited by the 09:52AM

government to the Court, so I won't repeat it, but it is just                09:52AM
completely ridiculous for defense to make that statement that               09:52AM
no case law was cited.                                                      09:52AM

        The fourth thing, Your Honor, is I understand                       09:52AM
very well the distinction between administrative proceeding                 09:52AM
and a civil proceeding.  As a matter of fact, it's going to be              09:52AM
really interesting to hear what the defendants have to say                  09:52AM
when they turn around and argue that administrative                         09:52AM
proceedings are the most meaningful thing for the Court to                  09:52AM
consider, but in this case, yes, I'm an attorney with the DOT               09:52AM
OIG.  I'm also a former federal prosecutor with extensive                   09:52AM
experience in conspiracy cases.                                             09:53AM

        And the fifth issue that I'd like to address as                     09:53AM
an experienced federal prosecutor is, a conspiracy is not                   09:53AM
completed until its abandoned.  We don't have to supersede in               09:53AM
order to argue, and we will argue, so all of the defense                    09:53AM
Counsel need to be put on notice right now, it's the                        09:53AM
government's contention that this conspiracy has not ended,                 09:53AM
the conspiracy has continued.                                              09:53AM

        As a matter of fact, immediately after the                         09:53AM
indictment, the first indictment in this case, there was                   09:53AM
another accident by one of these helicopters that the                      09:53AM
defendants owned and that the defendants have refused to allow             09:53AM
to be inspected.                                                           09:53AM

        The sixth thing I want to address is the Cislo                     09:53AM

---

*Criminal Case No. 18-00010, USA v. Walker, et al.*

| | | |
|---|---|---|
| 1 | issue.  This actually relates to the conflict of interest | 09:53AM |
| 2 | motion that was filed, Your Honor.  If Mr. McConwell is | 09:53AM |
| 3 | calling Mr. Cislo a liar and saying that he did not disclose | 09:53AM |
| 4 | their interaction with each other truthfully to the FBI | 09:54AM |
| 5 | agent, then again, I want to put Mr. McConwell on notice that | 09:54AM |
| 6 | he will be called as a witness to testify under oath about | 09:54AM |
| 7 | where that meeting took place, when that meeting took place, | 09:54AM |
| 8 | what was said during the course of that meeting, because Mr. | 09:54AM |
| 9 | Cislo has confirmed for us that Mr. McConwell specifically | 09:54AM |
| 10 | told him that he should not be talking to him, he knew he | 09:54AM |
| 11 | shouldn't be talking to him, but he was still talking with him | 09:54AM |
| 12 | and Mr. Cislo said he felt intimidated. | 09:54AM |
| 13 | So to address the last point that Mr. Rogers' | 09:54AM |
| 14 | Counsel brought up, the government isn't indicating in any way | 09:54AM |
| 15 | shape or form that the defense cannot talk to witnesses or | 09:54AM |
| 16 | understand what they're going to say.  What we are indicating | 09:54AM |
| 17 | is that it is inappropriate and a violation of law to | 09:54AM |
| 18 | intimidate witnesses, number one, and number two, to offer to | 09:54AM |
| 19 | pay attorney's fees for witnesses because that is unduly | 09:54AM |
| 20 | influencing a witness and it goes into tampering with | 09:55AM |
| 21 | witnesses and that is what we object to.  I have nothing | 09:55AM |
| 22 | further to say, Your Honor.  Thank you. | 09:55AM |
| 23 | MR. NICOLAYSEN:  Your Honor, I'll be happy to | 09:55AM |
| 24 | respond.  This is Greg Nicolaysen on behalf of Defendant -- | 09:55AM |
| 25 | MS. MILLER:  No, Your Honor, I'm going to object | 09:55AM |

```
 1    to Counsel responding.  The way these arguments go is, we        09:55AM
 2    filed the motion --                                              09:55AM
 3                THE COURT:  That's fine.  Ms. Miller, that's all      09:55AM
 4    right.  All right.  The Court has heard enough.  The Court        09:55AM
 5    will take the matters under advisement, will issue its           09:55AM
 6    recommendation and decision as soon as possible.                 09:55AM
 7                MS. MILLER:  Thank you, Your Honor.                   09:55AM
 8                THE COURT:  Thank you everybody.                      09:55AM
 9                (Proceedings concluded at 9:55 a.m.)                  09:55AM
10                              * * *
11    --------------------------------------------
12                CERTIFICATE OF OFFICIAL REPORTER
13
14    CITY OF HAGATNA              )
                                   )  ss.
15    TERRITORY OF GUAM            )
16
17         I, Veronica F. Flores, Official Court Reporter for
18    the United States District Court of Guam, do hereby certify
19    the foregoing pages, 1 to 38, to be a true and correct
20    transcript of the proceedings held in the above-entitled
21    matter to the best of my ability.
22         Dated this 11th day of May 2020.
23
24                           /s/Veronica F. Flores
                             Veronica F. Flores
25
```